UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL ANDREW KINCHLOE,

        Plaintiff,                            CASE NO. 2:18-cv-13214
v.                                      HONORABLE VICTORIA A. ROBERTS

PAUL EYKE, DOCTOR POZIOS,
PSYCHOLOGIST KENDALL,
CHIEF PSYCHIATRIST BEAVAIS,
WARDEN WARREN,
JOHN DOE M.D.O.C. MENTAL HEALTH DIRECTOR,
ESMAELI EMAMI, SCOTT WEBSTER,
CHEYANNE SHULTZ, and MS. STEWART,

        Defendants.
_____/

# OPINION AND ORDER

## DISMISSING DEFENDANTS KENDALL, BEAVAIS, WARREN, DOE, EMAMI, WEBSTER, SHULTZ, and STEWART,

## GRANTING IN PART AND DENYING IN PART THE FIRST MOTION TO AMEND [2] AND GRANTING THE SECOND MOTION TO AMEND [4],

## DISMISSING THE FIRST SUPPLEMENT TO THE COMPLAINT [13] AND ACCEPTING THE SECOND SUPPLEMENT [15],

## GRANTING IN PART AND DENYING IN PART THE FIRST REQUEST FOR AN INJUNCTION [12] AND DENYING THE SECOND REQUEST FOR AN INJUNCTION [16],

## DENYING THE MOTION FOR WAIVER OF SERVICE [17],

## DENYING THE MOTION TO ADD ALL EMPLOYEES OF THE MENTAL HEALTH SERVICES PROGRAM AS DEFENDANTS [18],

## AND

## DIRECTING THE CLERK OF COURT TO ADD MRS. WALT DAVIS AS A DEFENDANT AND TO MAIL THE MEDIATION NOTICE TO PLAINTIFF

## I. Introduction

Plaintiff Paul Andrew Kincheloe, a state prisoner at the Macomb Correctional Facility (MCF) in New Haven, Michigan, filed a *pro se* civil rights complaint for monetary and injunctive relief on October 15, 2018. (Dkt. #1). The defendants are the following individuals, who are employed by the Michigan Department of Corrections (MDOC): psychiatrists Dr. Paul Eyke, Dr. Pozios, Dr. Beavais, and Dr. Esmaeli Emami; psychologists Kendall and Scott Webster; prison warden Pat Warren; mental health professionals Cheyanne Shultz and Ms. Stewart; and the Mental Health Director for MDOC, whom Plaintiff identified as John Doe.

The complaint alleges that Dr. Paul Eyke determined Plaintiff was psychotic and referred him to the Woodland Correctional Center for treatment on or about January 18, 2018. Plaintiff was later sent to his present location at the MCF where Dr. Pozios instituted panel hearings on Plaintiff's condition. (Compl., Dkt. #1, p. 7). According to Plaintiff, the panel recommended treatment with the drug Risperal, but the hearings did not comply with Michigan's mental health code, and Dr. Pozios made no independent inquiry into Dr. Eyke's diagnosis and referral for treatment. *Id.*, p. 6. Plaintiff further alleges that he is being forced to participate in a mental health program and to take psychotropic drugs.[1] He claims that the forced participation in the program and the use of psychotropic drugs is torture and cruel and unusual punishment. *Id.*, pp. 4-5.

---

[1] In *Washington v. Harper*, 494 U.S. 210, 214 (1990), the Supreme Court described "psychotropic drugs" as "medications commonly used in treating mental disorders such as schizophrenia."

In a motion to amend (Dkt. #2), Plaintiff seeks to add his new psychologist, Mrs. Walt Davis, as a defendant. Plaintiff alleges that Mrs. Davis did not make an independent inquiry into his condition, nor review the papers referring Plaintiff to the mental health unit at MCF. The motion also seeks an order prohibiting state officials from giving him the psychotropic drug Haldol. In a second motion to amend (Dkt. #4), Plaintiff appears to want to correct the dates for the defendants' alleged non-compliance with a Michigan statute.

A complaint for a mandatory injunction (Dkt. #12) asks the Court to force MDOC employees to return Plaintiff's legal property, to bar MDOC employees from handling Plaintiff's legal papers, and to mail a copy of the Court's mediation notice to Plaintiff. A supplement to the complaint (Dkt. #13), alleges that Plaintiff's television was not delivered to him at MCF, following his transfer to that facility. Another supplement to the complaint (Dkt. #15) alleges that Plaintiff is being treated with Risperal and Haldol and that he did not authorize mental health treatment. In a second complaint for an injunction (Dkt. #16), Plaintiff makes a similar allegation about not consenting to mental health treatment.

In a "Motion to Waive Service on Defendants," Plaintiff asks the Court to waive service of his supplemental pleadings and complaint for a mandatory injunction on the defendants. According to Plaintiff, the complaint for a mandatory injunction is related to an admiralty issue and the defendants are not entitled to be privy to the particulars or nature of the admiralty proceeding.

Finally, in a recent motion to supplement the complaint (Dkt. #18), Plaintiff seeks permission to add the entire mental health services staff at MCF as defendants. Plaintiff contends that the entire staff is aiding and abetting a criminal enterprise.

## II. Legal Framework

The Court granted Plaintiff permission to proceed without prepaying the fees and costs for this action. (Dkt. #10). Pursuant to the Prison Litigation Reform Act of 1996, federal district courts must screen an indigent prisoner's complaint and dismiss the complaint, or any portion of it, if the allegations are frivolous, malicious, fail to state a claim for which relief can be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001). A complaint or allegation is frivolous if it lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

While a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted). In other words, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A §1983 plaintiff must prove two elements: "(1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014).

## III. Analysis

### A. The Eighth Amendment Claim

As noted above, Plaintiff's constitutional claim is that forcing him to participate in a mental health program and take psychotropic drugs is cruel and unusual punishment under the Eighth Amendment to the United States Constitution. It is well "settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney,* 509 U.S. 25, 31 (1993)). The Supreme Court, moreover,

> has recognized that mentally ill state prisoners have a "significant liberty interest" in avoiding unwanted antipsychotic drugs. *Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *Riggins v. Nevada,* 504 U.S. 127, 134–35, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992). . . . Although the Supreme Court in *Harper, Riggins* and *Sell [v. United States*, 539 U.S. 166, 123 S. Ct. 2174, 156 L.Ed.2d 197 (2003)]*, addressed due process challenges and not Eighth Amendment claims, the logical inference from these holdings is that subjecting a prisoner to involuntary medication when it is not absolutely necessary or medically appropriate is contrary to the "evolving standards of decency" that underpin the Eighth Amendment. *See Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) ("[T]he words of the [Eighth] Amendment are not precise, and . . . their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.").

*Thompson v. Bell*, 580 F.3d 423, 439-40 (6th Cir. 2009). Nevertheless, the United States Court of Appeals for the Sixth Circuit

> has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right. *See, e.g., Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986). [The Sixth Circuit] has adopted the requirement that a plaintiff allege "with particularity" all material facts to be relied upon when asserting that a governmental official has violated a constitutional right. *Elliott v. Perez,* 751 F.2d 1472, 1483 (5th Cir. 1985); *see also*

5

*Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir. 1987).

*Terrance v. Northville Reg'l Psychiatric Hosp.,* 286 F.3d 834, 842 (6th Cir. 2002).

Plaintiff has not alleged what defendants Esmaeli Emami, Scott Webster, Cheyanne Shultz, Ms. Stewart, or John Doe did to violate his rights under the Eighth Amendment. His conclusory allegation that all the defendants are guilty of dereliction of duty (Compl., Dkt. #1, p. 7) does not state a plausible claim for relief under § 1983, absent specific factual support. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Therefore, Plaintiff cannot maintain an action against Emami, Webster, Shultz, Stewart, or John Doe.

Plaintiff's only allegation about psychologist Kendall is that Kendall informed him he would be at MCF for one month. (Compl., Dkt. #1, p. 7). That allegation does not rise to the level of a constitutional violation. At worst, it is an inaccurate prediction of the amount of time that Plaintiff would spend at MCF.

As for Dr. Beavais and warden Pat Warren, Plaintiff merely states that he notified those defendants of the fraudulent hearings and his illegal detention in the mental health unit. *Id.* Even assuming that Dr. Beauvais, as chief psychiatrist, and Ms. Warren, as the prison warden, possess supervisory authority, they cannot be held liable on a *respondeat superior* theory of liability, because vicarious liability is not applicable in § 1983 lawsuits. *Iqbal*, 556 U.S. at 676.

> In other words, a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another. *See Gregory v. City of Louisville,* 444 F.3d 725, 751 (6th Cir. 2006). Consequently, a mere failure to act will not suffice to establish supervisory liability. *Id.; see also Essex [v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013)*]* ("There must be some conduct on the supervisor's part to which the plaintiff can point that is directly correlated with the plaintiff's injury."). [The Sixth Circuit has] have long held that supervisory liability requires some "active

6

unconstitutional behavior" on the part of the supervisor. *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir. 1999); *see also Hays v. Jefferson Cty.,* 668 F.2d 869, 873–74 (6th Cir. 1982) (A "mere failure to act (even) in the face of a statistical pattern of incidents of misconduct" is not sufficient to confer liability) (internal quotation marks omitted).

*Peatross v. Memphis*, 818 F.3d 233, 241–42 (6th Cir. 2016). Civil rights plaintiffs must demonstrate what each Government-official defendant, through the official's own individual actions, did to violate the Constitution. *Iqbal*, 556 U.S. at 676.; *see also Ridgeway v. Kentucky*, 510 F. App'x 412, 413 (6th Cir. 2013) (stating that, to proceed, a *pro se* plaintiff must "provide detail as to how each defendant allegedly violated his constitutional rights").

The Court concludes that Plaintiff's conclusory allegations regarding Dr. Emami, Scott Webster, Cheyanne Shultz, Ms. Stewart, John Doe, psychologist Kendall, Dr. Beavais, and warden Warren fail to state a plausible claim for which relief may be granted. Accordingly, those defendants are dismissed from this action without prejudice.

Plaintiff alleges that Dr. Eyke made an assessment of Plaintiff's mental condition and a recommendation for treatment and that Dr. Pozios instituted panel hearings on the issue. These allegations arguably state a claim for relief because they indicate that Drs. Eyke and Pozios were actively involved in Plaintiff's medical case. Therefore, Drs. Eyke and Pozios shall remain parties to this action at this time.

### B. The Motions to Amend, Supplemental Allegations, Complaints for an Injunction, and Miscellaneous Allegations

#### 1. The Motions to Amend

In his first motion to amend (Dkt. #2), Plaintiff seeks to add his new psychologist, Mrs. Walt Davis, as a defendant. Plaintiff alleges that Mrs. Davis did not review the papers referring him to the mental health unit at MCF and that she failed to make an independent inquiry into his

7

condition. In his second motion to amend (Dkt. #4), Plaintiff appears to want to correct the dates for the defendants' alleged non-compliance with a Michigan statute.

A party may amend his pleading once as a matter of course "if the pleading is one to which a responsive pleading is required." Fed. R. Civ. P. 15(a)(1)(B). The defendants have not been served with the complaint, and the complaint requires a responsive pleading from some of the defendants. The Court, therefore, grants Plaintiff's motion to correct the dates set forth in the initial complaint. (Dkt. #4).

The Court grants in part and denies in part Plaintiff's other motion to amend the complaint. (Dkt. #2). Specifically, the Court grants Plaintiff's request to add Mrs. Walt Davis as a defendant and directs the Clerk of Court to amend the docket to add Mrs. Davis as a defendant. But, for the reasons given below in Section III.B.3.b, the Court denies without prejudice Plaintiff's additional request to order the defendants to cease giving him psychotropic drugs.

### 2. The Supplemental Allegations

In a supplement to the initial complaint (Dkt. #13), Plaintiff alleges that MDOC was expected to deliver his personal property to him following his transfer to MCF, but that he did not receive his television. The Court may permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. Fed. R. Civ. P. 15(d). But Plaintiff's allegation about his personal property is not directly related to his Eighth Amendment claim, and he had not alleged that any of the named defendants are responsible for the missing personal property. "Unrelated claims against different defendants belong in different suits . . . ." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Therefore, the Court declines to permit Plaintiff to supplement his initial complaint with his allegation of missing property (Dkt. #13).

In another supplement to the initial complaint (Dkt. #15), Plaintiff alleges that he is being treated with Risperal and Haldol and that he did not authorize mental health treatment. Plaintiff contends that Mrs. Walt Davis informed him that he *did* authorize mental health treatment and that the written authorization is in his file, which she could not access. The Court will permit Plaintiff to supplement his initial complaint with these allegations because they are related to his Eighth Amendment claim.

### 3. The Complaints for Mandatory Injunction

#### a. The Stolen Papers

In a complaint for a mandatory injunction (Dkt. #12), Plaintiff alleges that MDOC employees took some of his legal papers from him. He asks the Court to force MDOC employees to return his stolen legal papers and to cease handling his legal papers. He also wants the Court to send him another copy of the Court's mediation notice which was taken from him.

Plaintiff's requests are granted in part and denied in part. The Court denies Plaintiff's request to order MDOC employees to return his papers and to cease handling his legal materials, because Plaintiff has not shown that any of the defendants are responsible for the alleged theft of his legal materials. The Court, nevertheless, grants Plaintiff's request for another copy of the Court's mediation notice. The Court directs the Clerk of Court to mail a copy of the mediation notice to Plaintiff with a copy of this order.

#### b. Contact with the Mental Health Department and the Collection of Data

In a second complaint for mandatory injunction (Dkt. #16), Plaintiff alleges that he has no history of mental illness and that he never consented to mental health treatment. He seeks an

order barring (1) all interaction between him and MDOC's mental health department, (2) treatment with psychotropic drugs, and (3) the collection of mental health data. Additionally, Plaintiff wants the Court to order MDOC officials to place him in a different custody level.

Plaintiff has no constitutional right to placement in a particular custody level. *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004). Accordingly, the Court denies Plaintiff's request to order MDOC officials to modify Plaintiff's custody level.

The Court reviews Plaintiff's request to bar any interaction with MDOC's mental health department as a motion for a preliminary injunction. The Sixth Circuit recently explained that

> [a] district court considers four factors when deciding whether to grant a preliminary injunction: (1) the movant's chances of succeeding on the merits; (2) if the movant would likely be permanently harmed absent the injunction; (3) whether the injunction would cause substantial harm to third parties; and (4) whether the injunction would serve the public interest. *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).

*McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018).

"Whether a movant is sufficiently likely to succeed on the merits is a question of law . . . ." *Id*. The law on treatment with psychotropic drugs is that "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227.

Plaintiff's "interest in avoiding the unwarranted administration of antipsychotic drugs is not insubstantial." *Id*. at 229. Although "the therapeutic benefits of antipsychotic drugs are well documented, it is also true that the drugs can have serious, even fatal, side effects." *Id.*

On the other hand, a psychiatrist determined that Plaintiff has a serious mental illness and that he requires treatment. "[A]n inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Id*. at 231.

To prevail on his Eighth Amendment claim, Petitioner must show that he received "grossly inadequate care." *Kramer v. Wilerson*, 302 F. App'x 396, 401 (6th Cir. 2008). "Grossly inadequate care" is treatment so incompetent, inadequate, or excessive as to shock the conscience or violate fundamental fairness. *Terrance*, 286 F.3d at 844. "[B]ecause no alleged fact tends to show that the prison doctors provided 'grossly inadequate care' or that their treatments were so medically unsound as to violate the law," *Kramer*, 302 F. App'x at 401, it is somewhat unlikely that Plaintiff will succeed on the merits. The first factor weighs in favor of denying an injunction.

The second factor also weighs in favor of denying an injunction, because Plaintiff has not shown that he will be permanently harmed absent an injunction. Although he alleges that he has a tick in a blood vessel behind his left shoulder, periods of incoherency, nerve damage to his pectoral muscles, skin cancer, and uprooted teeth, *see* Compl., p. 8, it is not clear that these symptoms are the result of Plaintiff's use of psychotropic drugs.

Third, enjoining the defendants from administering psychotropic drugs to Plaintiff could cause substantial harm to third parties if the lack of medication resulted in an increase in violence at MCF. The "[p]roper use of [antipsychotic] drugs is one of the most effective means of treating and controlling a mental illness likely to cause violent behavior." *Harper*, 494 U.S. at 226.

Finally, an injunction that forbids forced medication would not necessarily serve the public interest. As explained in *Harper*,

> [t]here are few cases in which the State's interest in combating the danger posed by a person to both himself and others is greater than in a prison environment, which, "by definition," is made up of persons with "a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984); *Jones [v. North Carolina Prisoners' Labor Union, Inc.,433 U.S. 119, 132 (1977)]*; *Wolff v. McDonnell,* 418 U.S. 539, 561-562, 94 S.Ct. 2963, 2977-2978, 41 L.Ed.2d 935 (1974) . . . . The State has undertaken the obligation to provide prisoners with medical treatment consistent not only with their own medical interests, but also with the needs of the institution. Prison administrators have not only an interest in ensuring the safety of prison staffs and administrative personnel, see *Hewitt [v. Helms,* 459 U.S. 460, 473 (1983)*]*, but also the duty to take reasonable measures for the prisoners' own safety. See *Hudson, supra,* 468 U.S., at 526-527, 104 S.Ct., at 3200-3201.

*Id.* at 225.

To conclude, the four factors considered above weigh in favor of not issuing the requested injunction. The Court, therefore, denies without prejudice Plaintiff's request for an injunction barring the defendants from interacting with him and treating him with psychotropic drugs. (Dkt. #16).

### 4. The Motion to Waive Service

In a "Motion to Waive Service on Defendants," Plaintiff appears to be asking the Court to forgo serving his complaint for a mandatory injunction on the defendants. According to Plaintiff, the complaint for mandatory injunction is related to an admiralty issue and the defendants are not entitled to be privy to the particulars or nature of the admiralty proceeding.

Contrary to Plaintiff's allegation, the defendants are entitled to notice of the nature of Plaintiff's allegations. *See* Federal Rule of Civil Procedure 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader

12

is entitled to relief . . . ."). Accordingly, the Court denies Plaintiff's "Motion to Waive Service on Defendants." (Dkt. #17). The Court, nevertheless, may postpone formal service of the complaint if it determines that mediation would be appropriate.

### 5. The Motion to Supplement

Plaintiff's most recent motion (Dkt. #18) seeks to add the entire mental health staff at MCF as defendants because, according to Plaintiff, the staff is aiding and abetting a criminal enterprise. Plaintiff has not identified the individuals that he wants to add as defendants, and his conclusory allegations about the mental health staff do not state a plausible claim for relief under § 1983, absent specific factual support. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Lillard,* 76 F.3d at 726.

Although Plaintiff does mention psychologist S. Pyrros Henson in his motion, the only allegation about Henson appears to be that Henson denied Plaintiff's grievance about the mental health program. The mere denial of a prisoner's grievance does not rise to the level of a constitutional claim, *Alder v. Corr. Med. Servs.,* F. App'x 839, 841 (6th Cir. 2003), and, as pointed out in the next two paragraphs, Plaintiff has no right to pursue criminal proceedings against individuals for allegedly engaging in criminal activity. Thus, the Court denies Plaintiff's recent motion to supplement his complaint and add more defendants to this action. (Dkt. #18).

### 6. The Miscellaneous Allegations

Plaintiff alleges that the defendants are "acting in concert" to commit wire and securities fraud and are aiding and abetting the crime of racketeering. (Compl., Dkt. #1, pp. 4-5). He goes on to say that the "acts of torture with psychotropic drugs and fraud stem from admiralty proceedings" and that they are "counter to such proceedings by foreign and domestic assets of U.S. military origin and foreign secret police or military origin." *Id*., p. 5.

To the extent Plaintiff is suggesting that the defendants should be prosecuted for violating federal laws on fraud, racketeering, and violations of maritime law, his claims are frivolous because private individuals cannot prosecute a criminal action in federal court. *Mikhail v. Kahn*, 991 F. Supp.2d 596, 634 (E.D. Pa. 2014). Private citizens also may not sue in federal court "to compel the state or federal government to investigate or prosecute an alleged crime." *Id*. at 635.

> Here in federal court, quite simply, '[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion,' *United States v. Batchelder*, 442 U.S. 114, 124 (1979), and even when individuals are wronged in a manner cognizable under criminal law, they 'do not have a constitutional right to the prosecution of alleged criminals,' *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184 (3rd Cir. 2009) (*per curiam*)."

*Id*. at 637. For these reasons, the Court dismisses Plaintiff's claims that the defendants have engaged in wire and securities fraud, racketeering, and violations of maritime law.

### IV. CONCLUSION AND ORDER

For the reasons given above, the Court:

- summarily dismisses psychologist Kendall, Dr. Beauvais, warden Pat Warren, John Doe, Dr. Esmaeli Emami, Scott Webster, Cheyanne Shultz, and Ms. Stewart from this action;

- grants in part and denies in part Plaintiff's first motion to amend (Dkt. #2). The Court grants Plaintiff's request to add Mrs. Walt Davis as a defendant, but denies without prejudice Plaintiff's additional request to order the defendants to cease giving him psychotropic drugs;

- grants Plaintiff's second motion to amend (Dkt. #4);

- dismisses the first supplemental allegation that MDOC employees failed to deliver all of Plaintiff's personal property to him (Dkt. #13);

- allows Plaintiff to supplement his initial complaint with the allegation that he did not authorize mental health treatment (Dkt. #15);

- grants in part and denies in part the first complaint for an injunction (Dkt. #12). The Court declines to issue a mandatory injunction stating that MDOC employees must return Plaintiff's stolen legal papers and cease handling his legal papers, but the Court grants Plaintiff's request for a copy of the Court's mediation notice;

- denies Plaintiff's second complaint for a mandatory injunction (Dkt. #16);

- denies Plaintiff's "Motion to Waive Service on the Defendants" (Dkt. #17);

- denies Plaintiff's Motion to add the entire Mental Health Services staff at MCF as defendants (Dkt. #18); and

- dismisses Plaintiff's claims of fraud, racketeering, and violations of maritime law.

It is ordered.

s/ Victoria A. Roberts
VICTORIA A. ROBERTS
Dated: January 24, 2019 UNITED STATES DISTRICT JUDGE